IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 9, 2015

**STATE OF TENNESSEE v. GUARY L. WALLACE**

**Appeal from the Circuit Court for Crockett County**
**No. 4325      Clayburn L. Peeples, Judge**

_____

**No. W2015-00708-CCA-R3-CD  -  Filed August 25, 2016**

_____

Defendant, Guary L. Wallace, was convicted in the Crockett County Circuit Court of attempted first degree murder, especially aggravated robbery, two counts of aggravated robbery, and two counts of especially aggravated assault, all under a theory of criminal responsibility.  Following a sentencing hearing, Defendant received the following sentences of incarceration: 40 years for attempted first degree murder; 40 years for especially aggravated robbery; 20 years for each aggravated robbery conviction; and ten years for each especially aggravated assault conviction.  His 40-year sentences were ordered to run concurrently, and his remaining sentences were ordered to run consecutively, resulting in a total effective sentence of 100 years.  Defendant appeals his convictions and sentences and argues: 1) that the evidence is insufficient to support his convictions on a theory of criminal responsibility; 2) that the trial court failed to fulfill its role as thirteenth juror; 3) that the trial court failed to properly instruct the jury on criminal responsibility; 4) that the prosecutor committed prosecutorial misconduct during closing argument; and 5) that his sentences amount to cruel and unusual punishment.  After a thorough review of the record, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Justin P. Jones, Brownsville, Tennessee, for the appellant, Guary L. Wallace.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Garry G. Brown, District Attorney General; Hillary Lawler Parham and Jerald Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

*Facts*

Shalanda Palmer was working at the Dollar Store in Friendship on May 18, 2012. At approximately 8:51 p.m., Craig Barbee entered the store. He approached Ms. Palmer and asked if there were any headscarves in the store. Ms. Palmer directed him to the aisle where they were located, and Barbee left the store. Approximately twenty minutes later, he returned wearing a mask and carrying a gun. Barbee pointed the gun at Ms. Palmer and demanded she open the safe. Barbee grabbed Ms. Palmer's arm and pushed her down an aisle of the store. She felt the gun pressed to the back of her head. They encountered Bill Garrett, Chief of the Friendship Police Department, who was dressed in plain clothes. Barbee demanded that Chief Garrett open the safe. Chief Garrett responded that he could not open the safe. Barbee took both of them to the back storage room. In the storage room, Barbee found Chief Garrett's wife, Daphne, and the assistant manager, Angela Lumley, hiding behind the door. He demanded cell phones and money from the victims. Ms. Garrett gave Barbee her cell phone, and he threw it on the floor and stomped it. Chief Garrett gave Barbee his wallet, which contained his badge, and Barbee "look[ed] at it funny." Barbee then pointed his gun at Chief Garrett. Chief Garrett reached for Barbee's gun, and there was a brief struggle. Barbee stepped back and said, "Oh, hell no." Barbee then shot Chief Garrett through the liver.

Barbee pointed the gun at Ms. Palmer and demanded she give him money from the cash register. Barbee, Ms. Palmer, and Ms. Garrett returned to the front of the store. Ms. Palmer opened the register, and Barbee grabbed the cash out of it and ran out of the store. Ms. Lumley looked outside after the shooting and saw a black SUV parked in the grass beside the dumpsters in the parking lot. She testified that people did not normally park in that location. Chief Garrett's wife, Ms. Garrett, did not see the black SUV parked outside the Dollar Store. She testified that after Barbee took money from the cash register, he ran outside, looked right and ran to the left.

After having been shot, Chief Garrett exited the store through the delivery doors in the storage room. He saw a vehicle parked in the grass. He saw Barbee run out of the store and look at Deputy Perry and run towards an Exxon station. Chief Garrett began to feel ill and laid down in the parking lot until an ambulance arrived. Chief Garrett was hospitalized for eight days for injuries related to his gunshot wound.

Michelle Triplett was shopping at the Dollar Store when the robbery occurred. She ran outside when Barbee led the others to the back of the store. She heard a gunshot while she was stopping other customers from entering the store. She drove home and

2

returned to the store with her husband. When she returned, she saw a black SUV parked in the grass beside the dumpster.

Lori Spears was sitting in her car with her boyfriend in the parking lot of the Dollar Store. She also saw the black SUV with its parking lights on parked beside the dumpster. She saw two people inside the vehicle. As she approached the store, she saw a man holding a gun to a woman's head, and she got back in her car and drove to the gas station beside the Dollar Store. She called 911, and she heard a gunshot while she was talking to the dispatcher.

Crockett County Sheriff's Deputy Blake Perry responded to the scene. When he arrived, he saw a black SUV parked beside the dumpster. The vehicle's parking lights were on. Deputy Perry saw a man, whom he identified as Defendant, standing on the driver's side of the vehicle. Deputy Perry shone his spotlight on Defendant, and Defendant fled on foot. Defendant ran towards the back of the Dollar Store. Deputy Perry focused his attention on the store because he knew that the gunman was still inside the store. Deputy Perry described Defendant as a black male with "somewhat of a scruffy beard, about six[-]foot, . . . roughly 200 pounds[.]"

Defendant gave a statement to Tennessee Bureau of Investigation (TBI) Agent Jeff Jackson. Defendant stated that he asked Barbee to drive him from Dyersburg to Jackson so that Defendant could take a bus to Memphis. Barbee's cousin "Little Man" was riding in the front passenger seat, and Barbee was driving. Defendant was riding in the back seat on the driver's side. Defendant stated that Barbee entered the store and returned to the car. Barbee told Defendant and "Little Man" that he was going to rob the store. Barbee asked Defendant to drive his vehicle, and Defendant told Barbee, "Man, I'm not doing no sh** like that." Defendant did not believe Barbee was serious. Barbee reached under Defendant's seat and got something from the back of the vehicle and went back inside the store. Defendant did not see a gun on Barbee. Defendant denied that he gave Barbee the gun Barbee used in the robbery. Defendant stated that he wanted to leave while Barbee was still inside the store, but "Little Man" took the keys to the vehicle. Defendant stated that he had crawled into the driver's seat to leave and that he had tried to exit the vehicle from the back of the vehicle, but the door would not open. He stated that "a police [officer] drove up the side of the store right there and got out and I'm pretty sure he looked me in the face, 'cause I looked him in the face." Defendant ran from the store and hid in a ditch. He stated that he was "scared to death." The following day, Defendant's mother told him that the police were looking for him. Defendant did not contact the police. Defendant was apprehended in Memphis.

TBI Agent Mark Reynolds testified that he processed the black SUV. Inside the vehicle, police found a watch and gold chain that Barbee had worn when he cased the

store. Police also found a UPC label from a shirt he had stolen and a pair of blue gloves. Barbee did not have keys to the vehicle when he was apprehended. Police obtained keys from Barbee's brother, who had loaned the vehicle to Barbee. Police also observed muddy tire tracks indicating that the SUV had driven from behind the store to the location where it was parked.

Barbee was subsequently apprehended by police and gave a confession. At trial, the defense introduced Barbee's statement to investigators. Barbee stated that Defendant did not have any knowledge of the robbery. He stated, "Like I said, it was even – it wasn't even my intention. It was just a spur of the moment thing. When I rode by [the Dollar Store] and seen [sic] it was one car in the lot, that's when I decided to rob it." Barbee told investigators that Defendant had given him the gun he used to rob the store and shoot Chief Garrett.

### *Sentencing hearing*

At the sentencing hearing, defense counsel conceded that Defendant's prior convictions classified him as a multiple offender. Defendant testified at the sentencing hearing. He denied that he had any knowledge of Barbee's plan to rob the store.

The trial court found that Defendant "was playing a major role and not a minor role." The trial court declined to apply any mitigating factors. The trial court applied the following listed statutory enhancement factors found in Tennessee Code Annotated section 40-35-114: (1) that Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (3) that the offense involved more than one victim; (6) that the personal injuries inflicted upon the victim were particularly great; (9) that Defendant possessed or employed a firearm; (10) that Defendant had no hesitation about committing a crime when the risk to human life was high; and (11) that the felony resulted in death or serious bodily injury to another person, and Defendant had previously been convicted of a felony that resulted in death or serious bodily injury. *See* T.C.A. § 40-35-114. The trial court stated,

> in view of the enhancing factors that are, as I said, abundant and significant, in view of the seriousness of this entire situation and in view of the Defendant's record, which is unusual in this Court in terms of its seriousness, I think that for every[ ]one of these offenses the maximum sentence is appropriate.

In ordering Defendant's sentences in counts 3, 4, 5, and 6 to run consecutive to each other and consecutive to counts 1 and 2, the trial court found that Defendant's criminal record indicated that he was a professional criminal who has knowingly devoted

4

his life to criminal acts as a major source of livelihood and that "his record is definitely extensive." The trial court also found that Defendant is a dangerous offender whose behavior indicates little or no regard for human life and that he was being sentenced for an offense committed while on parole. *See* T.C.A. § 40-35-115(b).

*Analysis*

### Sufficiency of the evidence

Defendant contends that the evidence is insufficient to sustain his convictions. Specifically, Defendant challenges the sufficiency of the evidence to establish that he was criminally responsible for the conduct of Craig Barbee. The State responds that the "evidence amply supports the jury's conclusion that Defendant served as wheel-man and gun-provider."

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence

and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. *Id.*

Defendant was convicted under a theory of criminal responsibility. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). As applicable in this case, an individual is criminally responsible for the conduct of another person if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" *Id.* § 39-11-402(2).

Under the theory of criminal responsibility, "an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred." *State v. Watson*, 227 S.W.3d 622, 639 (Tenn. Crim. App. 2006) (citing *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998)). In this situation, "[n]o particular act need be shown, and the defendant need not have taken a physical part in the crime to be held criminally responsible." *Id.* (citing *Ball*, 973 S.W.2d at 293). To prove a defendant's guilt under the theory of criminal responsibility, the State must establish that the defendant "'knowingly, voluntarily and with common intent unite[d] with the principal offender[ ] in the commission of the crime.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). Criminal responsibility for the actions of another person "requires that a defendant act with a culpable mental state, specifically, the 'intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense.'" *State v. Carson*, 950 S.W.2d 951, 954 (Tenn. 1997) (quoting T.C.A. § 39-11-402(2)). "A person acts with intent as to the nature or result of conduct when it is that person's conscious objective or desire to engage in the conduct or cause the result." *Id.* (citing T.C.A. § 39-11-302(a); *Maxey*, 898 S.W.2d at 757).

Taken in the light most favorable to the State, the evidence showed that Defendant provided Barbee with the gun Barbee used to shoot Chief Garrett and rob the Dollar General store. In his statement to the police, Defendant acknowledged that he knew Barbee intended to rob the store because he stated that Barbee returned to the vehicle and told him. The jury was free to accept that portion of Defendant's statement and reject Defendant's statement that he did not participate in the robbery. *See Batey v. State*, 527 S.W.2d 148 (Tenn. Crim. App. 1975). A witness saw someone sitting in the driver's seat

6

of the black SUV that was parked in the grass beside the dumpster in the parking lot. Deputy Perry saw Defendant standing outside the vehicle on the driver's side. Defendant ran from the scene when Deputy Perry arrived. The jury could have reasonably concluded that Defendant was the driver of the vehicle. The proof, though not overwhelming, was sufficient to support the jury's verdict. Defendant is not entitled to relief on this issue.

### Thirteenth juror

Defendant also contends that the trial court failed in its role as thirteenth juror. Defendant argues that because the trial court found that the State had failed to establish three enhancement factors at sentencing, the court "essentially disagreed with the legal sufficiency of the evidence."

Tennessee Rule of Criminal Procedure 33(d) imposes a mandatory duty on the trial judge to serve as the thirteenth juror in every criminal case. *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995). Rule 33(d) does not require the trial judge to make an explicit statement on the record. Instead, when the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict. *Id.* Only if the record contains statements by the trial judge indicating disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror, may an appellate court reverse the trial court's judgment. *Id.* Otherwise, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. *State v. Burlison*, 868 S.W.2d 713, 718-719 (Tenn. Crim. App. 1993).

Applying those principles to the record in this case, we conclude that the trial court fulfilled its duty to act as thirteenth juror. Defendant argues that the trial court disagreed with the weight of the evidence because at sentencing, the trial court found that the following enhancement factors did not apply: (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; (5) the defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense; and (12) during the commission of the felony, the defendant intentionally inflicted serious bodily injury upon another person, or the actions of the defendant resulted in the death of, or serious bodily injury to, a victim or a person other than the intended victim. *See* T.C.A. § 40-35-114. What Defendant ignores, however, is that the trial court explicitly stated at the sentencing hearing, "I was convinced beyond a reasonable doubt when I observed the case that [Defendant] was, in fact, the driver of the car and I think the jury was correct in coming to that conclusion." Furthermore, rejection of the above mentioned enhancement factors, which are only advisory, T.C.A. § 40-35-114, does *not* indicate that the trial court disagreed with the jury's verdict.

7

We could simply presume that the trial court fulfilled its duty as thirteenth juror because the trial court denied Defendant's request for a new trial pursuant to Rule 33 of the Rules of Criminal Procedure. The comment by the trial judge at sentencing, however, further illustrates that the verdict was approved. Defendant is not entitled to relief on this issue.

### *Jury instructions*

Defendant contends that the trial court erroneously instructed the jury on criminal responsibility, arguing that the proof at trial did not support the following jury charge as a basis for guilt:

> A defendant is also criminally responsible for an offense committed by the conduct of another if, having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist in its commission, the Defendant failed to make a reasonable effort to prevent commission of the offense.

Defense counsel objected to the jury instruction, and the following exchange occurred:

> THE COURT: Well, it's in the indictment.
>
> [PROSECUTOR]: It is.
>
> THE COURT: That's my problem with not [sic].
>
> [DEFENSE COUNSEL]: Well, we don't believe that he had a legal duty. He wasn't in a position.
>
> THE COURT: Well, you may have heard me ask the General why that [sic] charged that way, and say again for the record because we weren't on the record then. General, say again why did you charge under that theory.
>
> [PROSECUTOR]: Because [Defendant] knowing that the offense was going to occur would have had a legal duty imposed by law to act as a witness rather than an accomplice.

8

THE COURT: Now, I presume, [Defense Counsel], you think that is not – that he didn't have such a duty.

[DEFENSE COUNSEL]: No, sir.

THE COURT: Even knowing that it was going to occur he didn't have a duty.

[DEFENSE COUNSEL]: No, sir. He wasn't in a – no, sir.

THE COURT: Frankly, I think that's tenuous, but technically possible, so I'm going to overrule your objection.

As the trial court noted, the indictment charged Defendant with criminal responsibility for the offenses on two alternate bases of criminal responsibility: 1) acting with the intent to promote or assist in the commission of the offense, or to benefit in the proceeds or results of the offense; or 2) having a duty to prevent the commission of the offense failed to make a reasonable effort to prevent the commission of the offense. *See* T.C.A. § 39-11-402.

Defendant argues, and the State concedes, that the duty-to-act instruction applies to "members of law enforcement agencies and others (such as care givers or custodial parents) vested with a specific duty to prevent a crime from occurring." *See State v. Gordon*, No. 01C01-9605-CR-00213, 1997 WL 578961, at *6 (Tenn. Crim. App., Sept. 18, 1997), *no perm. app. filed*. Defendant asserts that because the proof did not support a finding that Defendant had a legal duty to prevent the commission of the offense, the instruction was misleading to the jury. The State characterizes the jury instruction as "little better than surplusage" and argues that the prosecutor's closing argument and the proof presented at trial indicate that the jury's verdict was based on Defendant's assistance in the offenses, and not Defendant's failure to act. The State asserts that the instruction did not influence the jury's verdict, and that it was harmless error.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see also* Tenn. R. Crim. P. 30. "[The] Defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). Our law requires that all of the elements of each offense be described and defined in connection with that offense. Subsection (3) of the criminal responsibility statute is, by its own terms, implicated only when the accused is under a legal duty to prevent the offense, or voluntarily undertakes to prevent it. *See State v. Hatcher*, 310 S.W.3d 788, 812 (Tenn. 2010). Defendant was under no such legal duty to prevent the crimes in this case, and there is no proof in the

9

record that he voluntarily undertook to prevent the crimes. Furthermore, we are aware of no "legal duty imposed by law" for *every lay witness* to a crime in progress "to make a reasonable effort to prevent the commission of the offense" or risk indictment, as argued by the State in the trial court. Such an argument clearly is not supported by the law of criminal responsibility in Tennessee. Accordingly, the trial court erred in giving the jury instruction.

We agree with the State, however, that the error was harmless. The proof established that Defendant waited in Barbee's vehicle in the parking lot of the Dollar Store while Barbee went inside to rob the store. Barbee told Defendant of his intention to rob the store and asked Defendant to drive the vehicle. When Deputy Perry responded to the scene, he saw Defendant standing outside the vehicle on the driver's side. Defendant fled the scene when he saw Deputy Perry. In Barbee's statement to police, he said that Defendant had given him the gun which he used to rob the store and shoot Chief Garrett. In her closing argument, the prosecutor told the jury that "[t]here are two theories of criminal responsibility[,]" including the theory that a defendant "is criminally responsible for an offense committed by another if they had a duty imposed by law or voluntarily undertaken[.]" However, the prosecutor then immediately told the jury:

> What I'd like to say, is if [Defendant] helped [Barbee] commit the offense, he is just as guilty as the person [who] shot Bill Garrett, [who] waved that gun in Shay Palmer's face, [who] shoved it in the back of her head where she could feel the gun pressing against the back of her head, [who] waved that gun in Daphne Garrett's face for $253.66.

The prosecutor did not specifically argue to the jury that Defendant had a legal duty to prevent the offenses or mention the third theory of criminal responsibility again in her closing argument. The proof clearly established that Defendant assisted in the commission of the offense rather than failed to act pursuant to a legal duty to prevent the offenses. We cannot conclude that the error in the jury instructions was so prejudicial that it probably changed the outcome of the trial. Defendant is therefore not entitled to relief on this issue.

## *Prosecutorial misconduct*

Defendant contends that the prosecutor engaged in prosecutorial misconduct during closing arguments. Specifically, he asserts that the prosecutor improperly:

> 1) misled the jury by stating that "[t]he second theory is . . . that the defendant is criminally responsible for an offense committed by another if they had a duty

imposed by law or voluntarily undertaken, they failed to make [a] reasonable effort to prevent the commission of the offense."

2) misstated the evidence by making the following contradictory statements: (a) "Craig Barbee planned a robbery and he got the gun from [Defendant], and he got [Defendant] to drive the car and Bill Garrett got in his way," and (b) "You heard from the beginning, the defense said, 'You're not going to hear the State's witnesses say [Defendant] drove off in that truck.' No, you're not. You didn't."

3) expressed her personal belief about the truth or falsity of a witness's testimony by making the following statements: (a) "[a]nd I'm going to say he flat out lied about – lied to you as to where the vehicle was parked because I'm still not sure where the vehicle was parked[,]" and (b) "Looked to me like it was parked there for a substantial period of time; not just stopped there and then taken off."

Defendant failed to object at trial to any of the five comments about which he complains. Consequently, Defendant has waived the issue. *See* Tenn. R. App. P. 36(a) (providing that an appellate court need not grant relief where party failed to take reasonably available action to prevent or nullify an error); *see also State v. Jordan*, 325 S.W.3d 1, 57-58 (Tenn. 2010). Moreover, in his amended motion for new trial, Defendant raised only one of the above comments, that Defendant had no legal duty to prevent the commission of the offenses. The issue was neither argued by defense counsel at the hearing on the motion for new trial, nor addressed on its merits by the trial court. As a result, the issue is waived, and we decline to review the issue for plain error. However, our disposition of this issue due to waiver by Defendant should not be interpreted to mean that we condone in any fashion the prosecutor's remarks to the jury that in her opinion a witness was lying.

## Sentencing

On appeal, Defendant contends that his sentence was excessive. Defendant does not argue that his sentence is outside the appropriate statutory range, nor does he specifically challenge the trial court's application of six enhancement factors. *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (affording a presumption of reasonableness to these determinations). Defendant also does not challenge the trial court's imposition of partial consecutive sentencing. *See State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013) (affording a presumption of reasonableness to consecutive sentencing determinations). Rather, Defendant asserts that his effective sentence of one hundred years for being criminally responsible for the crimes of another "is cruel and inhuman treatment and his sentence received is disproportionate to his role" in the offenses.

Both the Eighth Amendment to the United States Constitution and Article 1, section 16 of the Tennessee Constitution prohibit the infliction of cruel and unusual punishment. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Tenn. Const. art. 1, § 16 ("That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Despite the nearly identical wording of the two provisions, our supreme court has consistently afforded a more expansive interpretation to article I, section 16 than that afforded to the Eighth Amendment. *See State v. Harris*, 844 S.W.2d 601, 602 (Tenn. 1992).

Accordingly, although the United States Supreme Court has held that the Eighth Amendment contains no proportionality guarantee outside of sentencing for a capital offense, *see Rummel v. Estelle*, 445 U.S. 263, 274, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (recognizing that "for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative"); *Harmelin v. Michigan*, 501 U.S. 957, 994, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (refusing to extend proportionality review to non-capital offenses), our supreme court has concluded that the state constitution provides for the proportionality review of non-capital sentences. *Harris*, 844 S.W.2d at 602. Reviewing courts, however, should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *See Solem v. Helm*, 463 U.S. 277, 289-90, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) (emphasis in original) ( quoting *Estelle*, 445 U.S. at 272).

In order to determine if a sentence in a non-capital case is disproportionate and therefore in violation of Article 1, section 16's guarantee from cruel and unusual punishment, the Tennessee Supreme Court in *Harris* adopted the following analysis:

> [T]he sentence imposed is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends – the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

*Harris*, 844 S.W.2d at 603.

12

After examining the sentence imposed by the trial court in light of the seriousness of Defendant's offenses, we hold that there is no inference of gross disproportionality. The evidence showed that Defendant provided Barbee with the gun used to shoot an unarmed off-duty police officer during a robbery. Defendant waited outside in a vehicle, prepared to assist Barbee in making his escape. Defendant has a history of violent felonies and was on parole for armed robbery and felony escape at the time of the offenses in this case.

The sentence does not constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution or article I, section 16, of the Tennessee Constitution. In *State v. Sammie Lee Taylor*, No. 02C01-9501-CR-00029, 1996 WL 580997, at *23 (Tenn. Crim. App., Oct. 10, 1996), a panel of this court held:

> Furthermore, a punishment imposed within the statutory limits for that offense and according to this state's sentencing principles does not violate constitutional proscriptions against cruel and unusual punishment. *State v. Flynn*, 675 S.W.2d 494, 499 (Tenn. Crim. App. 1984); *State v. French*, 489 S.W.2d 57, 60 (Tenn. Crim. App. 1972). Therefore, any sentence within the statutory guidelines cannot be considered excessive. Additionally, the fact that the sentence imposed by the trial court exceeds the life expectancy of the appellant does not, per se, make the sentence oppressive or constitute an abuse of discretion. *See State v. Tyler*, 840 P.2d 413, 435 (Kan. 1992) (finding sentence of 111 to 330 years is not cruel and unusual punishment). *Accord. People v. Walker*, 663 N.E.2d 148 (Ill. App. Ct. 1996) (sentence of 100 to 300 years for rape, armed robbery, and attempted murder imposed upon sixty-four year old defendant not excessive); *Hurt v. State*, 657 N.E.2d 112 (Ind. 1995) (ninety[-]year sentence for murder and rape not unreasonable); *Fields v. State*, 501 P.2d 1390 (Okla. Crim. App. 1972) (1,000[-]year sentence not excessive). *Cf. State v. Wallace*, 604 S.W.2d 890, 892 (Tenn. Crim. App. 1980) (sentence of 150 years not cruel and unusual punishment); *Moore v. State*, 563 S.W.2d 215 (Tenn. Crim. App. 1977) (two consecutive life sentences upheld); *Hall v. State*, No. 01C01-911-CC-00338 (Tenn. Crim. App. at Nashville, Aug. 13, 1992) (110-year effective sentence does not violate eighth amendment).

Accordingly, Defendant is not entitled to relief on this issue.

CONCLUSION

Having reviewed all the issues and finding no reversible error, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE